**Reversed and Remanded and Majority and Concurring Opinions filed December 5, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00746-CV

---

### NICHOLAS LITINAS, Appellant

### V.

### CITY OF HOUSTON, Appellee

---

**On Appeal from the Co Civil Ct at Law No 2
Harris County, Texas
Trial Court Cause No. 1192666**

---

### MAJORITY OPINION

In this inverse condemnation case arising from the City of Houston's development of the intersection at West 28th Street and North Durham Drive, landowner and small business owner appeals the trial court's final judgment sustaining the City's plea to the jurisdiction. Because we conclude the City is not entitled to judgment as a matter of law, we reverse and remand.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Litinas owns and operates a flower shop at 736 West 28th Street and 2716 North Durham Drive, fronting on North Durham Drive and West 28th Street.[1] From both streets, his customers can park in head-in spaces that Litinas constructed as part of the improvements to the property. Litinas brought this inverse condemnation action against the City and a local redevelopment authority, based on road and sidewalk modifications which he asserted would eliminate the head-in parking and damage the value of his property.

## *Petition*

The Petition alleges that in late 2021, the City of Houston and the Memorial-Heights Redevelopment Authority (the "Authority") initiated a capital improvement program–the Shepherd, Durham, and Selected Cross Streets Reconstruction Project (the "Reconstruction Project"). As part of the project, the intersection at North Durham and West 28th is being reworked within the City's right-of-way to accommodate a bicycle lane and new sidewalk. The improvements also include curbing to be installed along most of the areas Litinas currently uses as head-in parking. In connection with the Authority's project, the Petition alleges that on March 18, 2022, the City sent Litinas a letter informing him that it would be reducing his driveway from its current 160-foot width to just 17 feet. The letter further states that the City is acting "in partnership with Tax Increment Reinvestment Zone (TIRZ)

---

[1] Appellant owns a 0.379-acre tract of land on the corner of West 28th Street and North Durham Drive. Appellant's property consists of eleven lots treated as four different addresses: 736 W. 28th Street; 2710 N. Durham Drive; 2716 N. Durham Drive; and 741 W. 27th Street. Lots associated with two other addresses are used as additional parking for his customers, located across an alleyway on the southern side of his business.

2

5" and that the "driveway will be modified as part of the project." Although the City's letter only references a reduction of the driveway on the North Durham Drive side of the property, the project schematic attached to the letter illustrates that the property's driveway on the West 28th Street side will be significantly narrowed as well.



The improvements are all within the City's right-of-way, but their configuration will block most of the head-in parking spaces for Litinas's store. Litinas asserted that the Reconstruction Project was a "taking" of his property, eliminating his head-in commercial parking, and permanently damaged the market value of his property. Litinas generally sought monetary relief in excess of $500,000.

*Proceedings on the City's Plea to the Jurisdiction*

The City filed its Answer followed by a Plea to the Jurisdiction. The arguments set out in the Plea are substantially based on the City's premise that "[t]he parking spaces at issue in the lawsuit are NOT on Plaintiff's actual property but in the City of Houston's right of way." In a supplemental briefing, the City later conceding this to be incorrect, but stated that the "location of the parking spaces is irrelevant to the City's contention that the construction wholly contained in the right-of-way did not result in a taking of any property or property right belonging to the

3

Plaintiff." The City maintained that Litinas failed to plead or prove an actionable vested property interest to pursue an inverse condemnation claim, including a claim under a theory of impaired access.

Litinas filed a response to the Plea, supported by his affidavit and the affidavit of a local certified architect, Scarlett McKenzie. In his affidavit Litinas states "head-in parking is critical for my business, which consists of both repeat customers and impulse buyers," that the project "eliminates all parking for the store," and forces him "to either relocate or rebuild with a much smaller footprint and inferior parking."

McKenzie's affidavit, based on her background, experience, and review of the project plans, states that the parking serving the flower shop would be eliminated.

> 4. I have reviewed project plans as well as an overlay of these plans on aerial photography of the subject property. As it impacts the property, the City's project calls for the construction of curbing along most of the property's N. Durham Drive frontage, leaving only a 17-footwide, exit-only driveway from the property to the roadway, to be accessed through the adjacent alley along the south side of the flower shop. Most of the property's West 28th Street frontage will also be curbed except for a 30-foot-wide, two-way driveway that dead-ends into the existing parking field along West 28th Street.

> 5. As a result of this construction and these changes, virtually all of the existing parking serving the flower shop is eliminated. The access and parking remaining to the property owner after construction of the City's project are not suitable to its existing use and improvements."

The City replied and offered affidavits in response. Contradicting Litinas's assertion that the head-in spaces comprised of *all* parking available to his florist, the City offered an affidavit attaching four photographs of parking associated with Litinas's florist, including the two below, one which depicts a sign posted at the store's entrance near the head-in parking indicating alternate available parking, one

4

which depicts the parking on the adjacent property.



After an oral hearing, the trial court granted the City's Plea and dismissed Litinas's claim for lack of jurisdiction.

## II. ISSUES AND ANALYSIS

Litinas complains that the trial court erred in granting the City's Plea to the Jurisdiction because his loss of parking is a compensable taking under Article I § 17 of the Texas Constitution. In turn, the City argues that Litinas failed to plead the theory of impaired access which the City contends the appeal is exclusively based, and therefore cannot be raised on appeal. Alternatively, the City contends if Litinas had pled the theory he failed to show "a material and substantial loss of access to his property."

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Whether the plaintiff has met its burden to demonstrate the trial court's subject-matter jurisdiction is a question of law that we review *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id*. If the

pleadings allege facts that neither demonstrate the trial court's jurisdiction nor affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Id*. at 226–27. If a jurisdictional plea challenges the existence of jurisdictional facts, we review the evidence relevant to the jurisdictional challenge to determine if a fact issue exists. *Id*. at 227. We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*. at 228. If the relevant evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact finder will resolve the fact issue. *Id*. at 227-28. However, if the evidence relevant to the jurisdictional issue is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

The Texas Constitution provides a clear and unambiguous waiver of immunity from suit for inverse condemnation claims under article I, section 17. Tex. Const. art. I, § 17(a); *City of Dallas v. Stewart,* 361 S.W.3d 562, 568 (Tex. 2012).

Article I, section 17 of the Texas Constitution waives governmental immunity in inverse condemnation cases and authorizes compensation for unconstitutional takings. *See* Tex. Const. art. I § 17; *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 772 (Tex. 2021). "When the government takes private property without first paying for it, the owner may recover damages for inverse condemnation." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25–26 (Tex. 2024) citing *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004).

To properly assert an inverse condemnation claim against a governmental entity, a party must plead that (1) an entity with eminent domain power intentionally

performed certain acts, (2) that resulted in taking, *damaging*, or destroying the property for, or applying it to, (3) public use. *See, e.g., Sw. Bell Tel., L.P. v. Harris County Toll Rd. Auth.*, 282 S.W.3d 59, 61 (Tex. 2009); *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). The parties do not dispute the City's action as intentional and for public use. They only disagree as to whether the City's Reconstruction Project is a compensable taking of Litinas's property. Specifically, Litinas contends that the Reconstruction project impairs access to his property and thereby diminishes the value of his property.

**A. Did Litinas waive his theory of impaired access by failing to plead it to the trial court?**

The City claims that because Litinas did not plead the theory of impaired access in his petition, he cannot raise it on appeal. The City's argument could be construed as either one of issue preservation or one of pleading sufficiency. In the case of preservation, Litinas raised the theory of impaired access to the trial court in response to the City's plea to the jurisdiction. Because Litinas timely made the court aware of his argument, he has preserved the issue for appeal. *Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014).

To the extent that the City argues that Litinas failed to plead a valid inverse condemnation claim based on a theory of impaired access, we disagree. In essence, the City contends that because the word "access" does not appear in Litinas's petition, he cannot argue impaired access here. Nevertheless, Litinas's petition made clear that his complaint was that the Reconstruction Project eliminated his head-in parking, which is but another way of describing "access." Litinas's argument in response to the City's jurisdictional plea was even more specific:

> The proposed configuration of these driveways is completely incompatible with the current parking layout. None of the parking

7

spaces can be **accessed** through the new driveways. The head-in parking existed in its current configuration for over twenty years, through multiple permitted remodels with this parking configuration. The change in **access** and resulting loss of the head-in parking located adjacent to the flower shop permanently damaged the market value of Litinas's property.

The trial court had before it and properly considered Litinas's theory of impaired access in determining whether it had jurisdiction. *See State v. Fiesta Mart, Inc.*, 233 S.W.3d 50, 56 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that plaintiff could recover damages under a theory of impaired access because the argument was presented in response to a jurisdictional plea, even when plaintiff did not allege impaired access in the petition). Litinas timely presented his theory of impaired access to the trial court, thus preserving the argument for appeal. However, if the City's plea was granted on the grounds that Litinas's pleadings were insufficient, he should have been given an opportunity to amend.

## B. Did the trial court err in holding that it did not have jurisdiction over Litinas's inverse condemnation claim?

A direct physical invasion of property is not required under the Texas Constitution to entitle an owner to compensation. *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *See DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex.1965). Texas provides landowners a right to access their property:

> [A]n abutting property owner possesses an easement of access which is a property right; that this easement is not limited to a right of access to the system of public roads; and that diminishment in the value of property resulting from a loss of access constitutes damage.

*DuPuy,* 396 S.W.2d at 108. Diminished value resulting from impaired access is compensable when *access is materially and substantially* impaired. *State v. Dawmar*

8

*Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008) (c*iting City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex. 1969)). Under a theory of impaired-access, a taking results in diminution of market value by unreasonably limiting the owner's ability to access its property for its intended use. *See, e.g., DuPuy*, 396 S.W.2d at 110 (holding that plaintiff was deprived of reasonable access when his property was left abutting a cul-de-sac); *Texland*, 446 S.W.2d at 4 (holding that there was a material and substantial impairment of access where transport vehicles that owner's property was specifically intended to accommodate could not adequately access the property after government action); *City of Beaumont v. Marks*, 443 S.W.2d 253, 256 (Tex. 1969) (holding that access was materially and substantially impaired when a railroad grading separation project prevented large trucks from reaching the property).

The "materially and substantially impaired test" acknowledges situations in which "normal access remained reasonably available, but access for which the property was specifically intended was rendered unreasonably deficient." *State v. Heal,* 917 S.W.2d 6, 10 (Tex 1996); *City of Houston v. Song*, No. 14-11-00903-CV, 2013 WL 269036, at *3 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, pet. denied). Access to property is not materially and substantially impaired merely because the remaining access points are less convenient. *Heal,* 917 S.W.2d at 11; *State v. Schmidt,* 867 S.W.2d 769, 780 (Tex. 1993); *see also City of San Antonio v. TPLP Office Park Props.,* 218 S.W.3d 60, 66–67 (Tex. 2007) ("Closing an access point and merely causing diversion of traffic or circuity of travel does not result in a compensable taking."). If suitable access remains, a taking will only occur if the property's purpose for which it was specifically intended was rendered unreasonably deficient. *See Heal*, 917 S.W.2d at 10.

Litinas's Petition asserts jurisdiction by-passing the City's governmental

9

immunity based on its claim "brought under Article I, Section 17 of the Texas Constitution" which if valid would constitute a waiver of governmental immunity. The Petition asserts the City's Reconstruction Project which called for "driveway reduction" on the two side streets eliminated head-in parking. The Petition alleges that he has retained this parking configuration for over twenty years and "the property has gone through multiple permitted remodels with this parking configuration," and that the City had never previously required Litinas to reduce the driveway. The Petition alleges the driveway reduction planned for the Reconstruction Project would eliminate all nineteen head-in parking spaces adjacent to his flower shop and this resulted in damages in excess of $500,000 from loss of market value.

In its Plea to the Jurisdiction, the City argued that the roadwork "has not materially impaired direct access to Litinas' property" and presented evidence that Litinas retained alternative parking on his other nearby properties to service the florist. The City did not affirmatively dispute Litinas's assertion that the Reconstruction Project eliminated all head-in parking on the lot where his flower shop stood and did not dispute that Litinas has permissibly operated his business in its current configuration since at least November 2006.

In Litinas's response to the Plea he asserted that having remodeled over the years obtaining building permits consistent with the parking configuration, he suffered loss in value to the improvements on the property. In his affidavit he contends "[t]he change in access to my driveways eliminates all parking for the store, forcing me to either relocate or rebuild with a much smaller footprint and inferior parking." Litinas's response did not address the City's evidence of his existing use and continuing availability of parking on other lots he owns nearby.

In determining whether diminished value due to impaired access is compensable, we look to whether other access points remain after the taking and whether those access points are reasonable. *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008). Remaining access is analyzed in light of the actual or intended uses of remaining property as reflected by existing uses and improvements and applicable zoning. *See, e.g., Texland,* 446 S.W.2d at 4 (holding that access was impaired, even though normal access remained reasonably available, because access for which the property was specifically intended was rendered unreasonably deficient). Although the Reconstruction Plan's design eliminates direct, head-in, access to multiple spaces along the side of each street, access points remain: an entrance drive on Durham, an access point on West 28th Street, and one through a City Alley on Durham between West 27th and West 28th Street. However, as Litinas complains, the access points are incompatible with the parking design on this lot. Despite the Plan's provision of driveways as means for vehicles to enter the area currently used for parking, the record fairly supports Litinas's unchallenged evidence that the overall impact of the curbing and other improvements effectively eliminates virtually all store-front head-in parking spots on the lot with the flower shop. Neither party presents any evidence with respect to applicable zoning, but appellant's historical use of the property as a flower shop with convenient front-end parking is unchallenged.

The spillover lot[2] illustrates that some of the remaining access points can still accommodate parking, but only parking on the adjacent property, which necessarily

---

[2] Litinas did not contest his ownership in the alternative lot or the evidence illustrating the alternative parking is accessible through the City Alley between W 28th and 27th street or a driveway on 27th Street. On appeal he admits his ownership in the lot separated from the flower shop property by a City alley which he concedes on appeal "used for spillover parking (on dirt) or seasonal inventory."

requires that customers walk across the City's alley to the property. Proof of the existence of the spillover lot, however, does not address Litinas's affidavit testimony explaining the relationship of the primary head-in parking to the character of his business—that the head-in parking was critical to his type of business, a florist, dependent on impulse buyers. The access point at 28th Street would be insufficient and the access on Durham cannot accommodate the pre-existing head-in parking. The only access to parking the Plan accounts for is to the spillover lot on the other side of the City's alley. Although the spillover lot may be considered as evidence relevant to the value of the property in assessing damages, the City did not provide evidence conclusively showing that the access points to service that lot were not unreasonably deficient as to the lot on which the flower shop is situated, and in light of the purpose of the commercial use.

We consider this case comparable to the *Texland* case, where the record showed that transport vehicles essential to property's industrial use were not shown unable to access and park on the property, parking was "not impossible," but rather "most difficult" such that the access had been restricted in a way that the vehicles could not reasonably park, back up, or maneuver within the property on a regular basis. 446 S.W.2d at 4. The court held that the difficulty and impracticality to the transport vehicles constituted a substantial and material impairment of access to the property, and the property was damaged as a result. *Id.* In this case, Litinas's property required a convenience critical to servicing "repeat customers and impulse buyers," and the Reconstruction Plan's elimination of head-in parking rendered the property unreasonably deficient for this fast-service retail purpose of selling flowers. As in *Texland*, the City's Project left Litinas with some remaining access points, which did not render it impossible to enter the property. However, for the purposes

12

specific to the property, in this case, the fast-service retail of flowers, customers could no longer park directly in front of the flower shop on the same lot as the flower shop.

We conclude the City failed to negate as a matter of law that the Reconstruction Plan constituted a substantial and material impairment to access Litinas's property.

### III. CONCLUSION

We reverse the trial court's final order and remand the case to the trial court for further proceedings consistent with this opinion.

/s/    Randy Wilson
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson (Christopher, C.J., concurring).